UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.C., et al., | Case No. 24-cv-02597-AMO |
| Plaintiffs, | |
| v. | **ORDER RE MOTIONS TO DISMISS FIRST AMENDED COMPLAINT** |
| COUNTY OF SONOMA, et al., | Re: Dkt. Nos. 78, 81 |
| Defendants. | |

Before the Court are the motions to dismiss of Defendants Sonoma County and individual Sonoma County social workers (ECF 78) and Defendant Amy Lafferty (ECF 81). The motions are fully briefed, and because they were suitable for decision without oral argument, the Court vacated the hearing set for May 20, 2025. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-6. This Order assumes familiarity with the facts and procedural history of this case. Having carefully considered the parties' papers and the arguments made therein, as well as the relevant legal authority, the Court **GRANTS IN PART AND DENIES IN PART** both motions for the following reasons.

I.  DISCUSSION

Plaintiffs P.C. and M.C. filed the operative first amended complaint on October 31, 2024. Amended Complaint ("Am. Compl.") (ECF 66). The amended complaint asserts causes of action related to the alleged abuse Plaintiffs suffered at the hands of their adoptive parents, Jose and Gina Centeno ("the Centenos"), and names as defendants Sonoma County and ten Sonoma County social workers ("County Social Workers"),[1] the Centenos, the City of Rohnert Park, Officer

---

[1] The County Social Workers named in the amended complaint are McCay, Jones, Sashital, Winters, Taylor, De La Cruz, Kroeze, Gilday, Romero, and Morrissey. Defendants McCay and Jones were subsequently dismissed. ECF 122.

Gonzalez, Officer Groat, TLC Child and Family Services ("TLC"), and Amy Lafferty, the adoption services representative of the State of California in charge of P.C. and M.C.'s adoption. Plaintiffs bring claims under 42 U.S.C. §§ 1983, 1985 (Counts 1 and 2) against all Defendants; a *Monell* claim (Count 3), breach of mandatory duty claim (Count 4), intentional infliction of emotional distress ("IIED") claim (Count 6), and assault claim (Count 7) against Sonoma County and TLC; and a negligence claim (Count 5) against TLC. Plaintiffs have settled their claims against TLC, as well as those against Rohnert Park, Officer Gonzalez, Officer Groat, and TLC. *See* ECF 107. Further, because Plaintiffs voluntarily dismiss Counts 6 and 7 against Sonoma County, ECF 83 at 6, the causes of action that remain are Counts 1 and 2 against all remaining Defendants, and 3 and 4 against Sonoma County.

On December 6, 2024, Sonoma County and the County Social Workers (together, "County Defendants") filed a motion to dismiss the amended complaint for failure to state a claim, ECF 78, as did Lafferty, ECF 81. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires dismissal when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When evaluating a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). However, "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123,

1135 (9th Cir. 2014) (citations omitted).  Courts may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."  *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).  Courts should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

### A. County Defendants' Motion to Dismiss

County Defendants move to dismiss all of Plaintiffs' claims against them, as well as Plaintiffs' claim for punitive damages against the County Social Workers.  *See* County Defendants' Motion ("County Mot.") (ECF 78).  The Court addresses each claim and the arguments for dismissal in turn.

#### 1. Section 1983

Plaintiffs bring two claims against County Defendants under the Fourteenth Amendment for failure to adequately respond to or investigate reports of abuse and for providing false information to a court.  Am. Compl. ¶¶ 78-90.  "The Fourteenth Amendment substantive due process clause protects a foster child's liberty interest in social worker supervision and protection from harm inflicted by a foster parent."  *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir. 2010).  County Defendants argue the County Social Workers are either absolutely immune from liability or that they are entitled to qualified immunity because Plaintiffs fail to allege deliberate indifference.  They further contend Sonoma County cannot be held vicariously liable for the County Social Workers.  Each argument is addressed in turn below.

##### a. Absolute Immunity

"Defendants in § 1983 suits are generally entitled to only immunities that existed at common law."  *Rieman v. Vazquez*, 96 F.4th 1085, 1090 (9th Cir. 2024).  "[S]ocial workers are not afforded absolute immunity for their investigatory conduct, discretionary decisions or recommendations."  *Cox v. Dep't of Soc. & Health Servs.*, 913 F.3d 831, 837 (9th Cir. 2019) (quoting *Tamas*, 630 F.3d at 842).  Nor are they entitled to absolute immunity from claims relating to "investigative or administrative" activity.  *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1115 (9th Cir. 2017) (citation omitted).  Courts "grant[] state actors absolute immunity only for those functions that [are] critical to the judicial process itself," such as "initiating a prosecution."  *Miller*

*v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (*en banc*) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)).  Social workers may enjoy absolute immunity related to "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." *Rieman*, 96 F.4th at 1090 (citation omitted).  Such immunity is only available if the social worker's "activity or function" is "part and parcel of presenting the state's case as a generic advocate." *Hardwick*, 844 F.3d at 1115.

County Defendants argue that they are absolutely immune because the alleged conduct – "providing knowingly wrongful and false information to the Court, including, but not limited to, in the Adoption Reports submitted to the Court," Am. Compl. ¶ 81 – involved testifying in court, which is a "quasi-judicial function" of a social worker's job.  County Mot. at 12.  Count 1, however, also alleges County Defendants failed to provide medical, dental, and mental health services, conduct mandated visits, respond to reports of abuse, and ensure the adequacy of placements.  Am. Compl. ¶ 80.  Viewed in the light most favorable to Plaintiffs, the allegations underlying Count 1 relate to County Defendants' "investigatory conduct" as they arise from a failure to respond to reports of abuse.  *See Cox*, 913 F.3d at 837.  County Defendants are not entitled to absolute immunity for such conduct.  *See Hardwick*, 844 F.3d at 1116 ("[S]ocial workers . . . are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute.") (quoting *Beltran v. Santa Clara Cnty.*, 514 F.3d 906 (9th Cir. 2008)).  Because County Defendants have not met their burden of showing the underlying allegations relate to the County Social Workers' actions as "part and parcel of presenting the state's case as a generic advocate" rather than as to their "investigative or administrative" functions, *Hardwick*, 844 F.3d at 1116, the Court finds the County Social Workers are not absolutely immune from Count 1.[2]

### b.  Qualified Immunity

County Defendants next argue that they are entitled to qualified immunity against Count 2.

---

[2] County Defendants do not argue County Social Workers are absolutely immune from Count 2.

To determine whether a defendant is shielded by qualified immunity, courts ask "(1) whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right and (2) if so, whether the right was clearly established, such that a reasonable official would understand that his conduct violated that right." *Tamas*, 630 F.3d at 842.  County Defendants argue Plaintiffs have not alleged a violation of a constitutional right because they have not adequately pleaded deliberate indifference sufficient to support a claim for violation of due process.  "To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.' " *Id.* at 844.  Conduct that "shocks the conscience" is "deliberate indifference to a known . . . [or obvious] danger." *Cox*, 913 F.3d at 837.  Deliberate indifference requires "a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that such a risk existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Id.* (internal quotation marks and citation omitted).

        County Defendants argue the amended complaint is "factually devoid" of allegations that "each of the individual social worker defendants had knowledge that the Centenos posed a specific threat to P.C. and/or M.C. prior to their placement with the Centenos." County Mot. at 14.  In other words, County Defendants contend Plaintiffs fail to allege each County Social Worker was subjectively aware of facts from which an inference of a substantial risk of serious harm could be drawn.  Not so.  The amended complaint details how the County Defendants were aware that the Centenos "were having trouble caring for" Kaya, Michelle, and P.K. prior to P.C.'s placement with the Centenos, Am. Compl. ¶ 29, and that shortly after P.C.'s placement – and prior to M.C.'s placement – significant concerns emerged, including that the Centenos had removed Michelle from school and had failed to seek therapy for any of the children, despite being informed therapy would be essential.  Am. Compl. ¶¶ 30-31.  Accordingly, Plaintiffs have sufficiently alleged that the County Social Workers disregarded facts that would "compel an inference that there existed an objectively substantial risk" that the Centenos would harm the children. *See Cox*, 913 F.3d at 837-38.  Plaintiffs' allegations identify which County Social Worker was assigned to each report and

1  investigation, the evidence of which County Defendants were made aware, and the timing of the

2  investigations and incidents. *See, e.g.*, Am. Compl. ¶¶ 34-37, 51-57, 59-63. These allegations are

3  far from conclusory.

4  Thus, Plaintiffs have sufficiently alleged deliberate indifference and the County Social

5  Workers are not entitled to qualified immunity. County Defendants' motion to dismiss Counts 1

6  and 2 because they are immune is **DENIED**.

### c. Vicarious Liability

8  County Defendants argue Plaintiffs' Section 1983 claims must be dismissed as to Sonoma

9  County, as public entities may not be held liable for acts of an employee under Section 1983 on a

10  theory of respondeat superior. County Mot. at 16. Indeed, "a local government cannot be held

11  liable under § 1983 on a respondeat superior theory." *Monell v. New York City Dept. of Soc.

12  Serv.*, 436 U.S. 658, 691 (1978). Plaintiffs do not address this argument and thus concede the

13  point. *See Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1146 (N.D. Cal. 2020) (quoting

14  *Ardente*, *Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010)) ("Plaintiff fails to

15  respond to this argument and therefore concedes it through silence."). As a result, the County

16  Defendants' motion to dismiss Counts 1 and 2 as to Sonoma County is **GRANTED** without leave

17  to amend.

### 2. *Monell* Claim

19  Next, County Defendants move to dismiss Plaintiffs' third cause of action for violation of

20  their due process rights. A government entity may be liable under 42 U.S.C. § 1983 where a

21  "policy, practice, or custom" was the "moving force" behind a constitutional violation. *Dougherty

22  v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *see Monell*, 436 U.S. at 691. To establish

23  government liability for an improper custom, there must be "practices of sufficient duration,

24  frequency and consistency" rather than "isolated or sporadic incidents." *Trevino v. Gates*, 99 F.3d

25  911, 918 (9th Cir. 1996); *see Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) ("Proof of

26  random acts or isolated events is insufficient to establish custom."). "The line between 'isolated

27  or sporadic incidents' and 'persistent widespread conduct' is not clearly delineated." *Lemus v.

28  Cty. of Merced*, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 2017 WL 4772557 (9th

Cir. 2017); *see Nelson v. City of Los Angeles*, 2015 WL 1931714, at *10-11, 18 (C.D. Cal. Apr. 28, 2015) (denying motion to dismiss *Monell* claim where plaintiffs alleged numerous instances of jail guards retaliating against them for reporting misconduct); *compare Meehan v. Los Angeles County*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents not sufficient to establish custom) *and Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (manner of one arrest insufficient to establish policy) *with Motley v. Smith*, 2016 WL 3407658, at *9 (E.D. Cal. June 20, 2016) (multiple incidents of police denying protection to abused women because of their gender were sufficient to allege widespread custom).

As discussed above, the Court finds that Plaintiffs sufficiently allege deliberate indifference by the County Social Workers. Plaintiffs allege that the County had the following policies, practices, and customs that gave effect to such deliberate indifference:

1. "The policy of placing children with foster/adoptive parents without conducting a thorough and complete investigation of the prospective foster/adoptive parents, their home, and the children living within that home."

2. "The policy of placing multiple children with foster/adoptive parents without interviewing and examining the children already placed with such parents."

3. "The policy of conducting inadequate investigations of reports of abuse and neglect."

4. "The policy of deliberate indifference to children designated as 'high-risk.'"

5. "The policy of limiting child abuse investigations to the subject of the report, and deliberate indifference to the status of other children living in the home."

6. "Deliberate indifference toward training, supervision, and discipline."

Am. Compl. ¶ 94. County Defendants argue Plaintiffs have not sufficiently alleged a *Monell* claim because the amended complaint "alleges merely that certain social workers behaved in certain ways regarding [Plaintiffs]" and lacks "sufficient factual allegations that any of the actions of the Defendant Social Workers were so widespread as to be attributable to the County." County Mot. at 19. However, Plaintiffs have alleged multiple instances in which the County conducted inadequate investigations of abuse and neglect (the third policy). *See* Am. Compl. ¶¶ 30, 34, 36-37, 51-52, 59, 60, 62. Not only were these instances discrete occurrences that took place at

7

different points over the course of several years, but they were also carried out by different County employees. Moreover, Plaintiffs have alleged at least five instances in which the County limited child abuse investigations to the subject of the report (the fifth policy) – that is, when County Social Workers did not inquire as to the welfare of one set of children in the Centeno home when investigating reports of abuse into the other set of children. *See* Am. Compl. ¶¶ 47, 52, 53, 58, 60. These instances also involved different County Defendants and took place over the course of years. This is sufficient, at the pleading stage, to allege a pattern or practice that caused Plaintiffs' constitutional injury. *See Motley*, 2016 WL 3407658, at *9. Thus, the motion to dismiss Count 3 based on the third and fifth alleged policies is **DENIED**.

However, Plaintiffs fail to allege more than one or two instances where County Defendants carried out the alleged first, second, and fourth policies sufficient to allege more than isolated incidents. *See, e.g.*, Am. Compl. ¶¶ 94 ("[T]he County and TLC twice placed 'high risk' children with the Centenos without conducting a thorough and complete investigation . . . ."). Plaintiffs' allegations regarding the failure to train policy (sixth policy) are also insufficient to establish a *Monell* claim, as they are conclusory and are not based in factual allegations. *See, e.g.*, Am. Compl. ¶ 47 ("Due to the County's deficient procedures, practices, training and supervision, these responding social workers were not even aware that Plaintiffs . . . were still living in the Centeno home."). County Defendants' motion to dismiss Plaintiffs' *Monell* claim is therefore **GRANTED** as to the first, second, fourth, and sixth policies, but because Plaintiffs may be able to allege additional facts sufficient to state a claim based on those policies, the Court cannot determine amendment would be futile, and thus grants leave to amend. *See Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) ("[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.' ").

### 3. Breach of Mandatory Duty

County Defendants move to dismiss Count 4, Plaintiffs' breach of mandatory duty claim based on mandatory duties under State Adoption Program Regulations, Child Welfare Services

Regulations, the Welfare and Institutions Code, and the California Penal Code. County Mot. at 20.

County Defendants first argue they are immune from this cause of action. California Government Code § 820.2 immunizes public employees from liability "resulting from [their] act or omission where the act or omission was the result of the exercise of the discretion vested in [them], whether or not such discretion be abused." Action is only immunized under Section 820.2 when the public employee "prove[s] that . . . in deciding to perform (or not perform) the act which led to [the] plaintiff's injury, [the employee] *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives." *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985) (citation omitted) (emphasis in original). Accordingly, government defendants "have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who 'consciously balanc[ed] risks and advantages.' " *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012). The County Social Workers have not met their burden, as they fail to present any evidence that they made considered policy decisions and consciously exercised discretion in their actions.

As for Sonoma County, it is liable for injury "proximately caused by an act or omission of an employee," unless that employee is found to be immune. Cal. Gov. Code § 815.2(a)-(b). Because the County Social Workers are not immune, the County is not either. *See Sanderlin v. City of San Jose*, 2022 WL 913055, at *14 (N.D. Cal. Mar. 29, 2022) (rejecting San Jose's argument that it was immune under Section 815.2 where the court found its employees were not statutorily immune).

Having determined the County Defendants are not immune from Plaintiffs' breach of mandatory duty claim, the Court addresses the sufficiency of Plaintiffs' allegations related to each purported breach of duty below.

### a. Adoption Program Regulations

Plaintiffs allege Defendants had mandatory duties under State Adoption Program Regulations §§ 35177, 35181, and 35183, which instruct adoption agencies to conduct face-to-face interviews with adoptive applicants and individuals residing in the adoptive household. These

1 sections impose mandatory duties, which Plaintiffs have sufficiently alleged that County
2 Defendants violated by failing to conduct the required interviews. *See* Am. Compl. ¶¶ 102-103.
3 County Defendants argue that because these sections are located within subchapter 5 of Chapter 3
4 in Title 22 of the California Code of Regulations, which is titled "Procedures for Agency
5 Adoptions," the subchapter constitutes "mere[] guidelines," not obligations. County Mot. at 22.
6 Although "[a]n employee manual . . . is not an enactment that imposes a mandatory duty on
7 county employees," *Cnty. of Los Angeles v. Superior Ct.*, 102 Cal. App. 4th 627, 638 (2002),
8 County Defendants have neither explained nor provided authority for their contention that these
9 procedures amount to nothing more than guidelines or an employee manual. As such, the Court
10 **DENIES** County Defendants' motion to dismiss Count 4 as to the Adoption Program Regulations.

### b. Child Welfare Services Regulations

Plaintiffs also allege County Defendants breached mandatory duties set forth in Child Welfare Services Regulations §§ 31-405.22 and 31-125. Section 31-405 requires that a social worker "shall . . . [g]ive preferential consideration for placement of the child to an adult who is a grandparent, aunt, uncle or sibling of the child." Similarly, that section instructs social workers to "[m]onitor the child's physical and emotional condition, and take necessary actions to safeguard the child's growth and development while in placement." However, these regulations do not require social workers to take any "particular action" or provide "implementing guidelines or rules" to facilitate a statutory requirement. *Guzman v. Cnty. of Monterey*, 46 Cal. 4th 887, 898 (2009); *see de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 261 (2007) (finding no mandatory duty where the predicate enactment "confers on government officials the discretion to evaluate and decide how best to implement the required security") (citation omitted). This gives social workers discretion in the execution of their duties and thus does not impose a mandatory duty. *See Mueller v. Cnty. of San Bernardino*, 2018 WL 8130611, at *3 n.5 (C.D. Cal. May 9, 2018) (noting that while Section 31-405.22 "appear[s] to impose a duty to complete a process" it "afford[s] significant discretion to social workers").

By contrast, Child Welfare Services Regulation § 31-125 requires a social worker investigating a referral to have "in-person contact with all of the children alleged to be abused,

neglected, or exploited, and at least one adult who has information regarding the allegations." This requirement to have in-person contact provides a clear directive. *See Gerrie v. Cnty. of San Bernardino*, 2019 WL 8013412, at *9 (C.D. Cal. Nov. 12, 2019) (finding that "the requirement that the social worker contact the child's parents as part of the investigation [pursuant to regulation 31-125] is mandatory"). The Court thus **GRANTS** the motion to dismiss Count 4 as to Child Welfare Services Regulation § 31-405.22 but **DENIES** the motion to dismiss Count 4 as to § 31-125.

### c. Welfare and Institutions Code

Plaintiffs further allege County Defendants breached mandatory duties set forth in the California Welfare and Institutions Code. Several statutory sections on which Plaintiffs rely, however, provide for discretion and thus do not impose a mandatory duty.

For example, Welfare and Institutions Code § 16507.5 states that when a minor is separated from their family, the county welfare department or adoption agency social worker "shall make any and all reasonable and necessary provisions for the care, supervision, custody, conduct, maintenance, and support of the minor." However, the statute does not specify what those "reasonable and necessary provisions" entail, leaving it to the social worker's discretion. *See Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000) (holding that a public officer must have been required to take a particular action that does not involve the exercise of discretion). Section 16519 likewise does not provide a mandatory duty, as it simply recounts the legislative finding and declaration regarding the importance of foster child safety, and Plaintiffs point to no language that imposes a duty. *See Cnty. of Los Angeles*, 102 Cal. App. 4th at 638-39. Plaintiffs' claim for breach of a mandatory duty under Section 16507.5 accordingly fails. Similarly, Section 16504 requires social workers to make an "immediate in-person response" where a child is "reported to the county welfare services department to be endangered by abuse, neglect, or exploitation." Cal. Welf. & Inst. Code § 16504(a), (c). The social worker "shall consider providing appropriate social services to maintain the child safely in his or her own home." *Id.* § 16504(a). However, an in-person response is not required when the department determines "based upon an evaluation of risk" (which "includes collateral contacts" and "a review of previous

referrals") that an in-person response is not appropriate. *Id.* This statute does not provide a mandatory duty because it vests discretion in the social worker and department by not requiring an in-person response where the department determines that one is not necessary or proper. *See Cnty. of Los Angeles v. Superior Ct.*, 209 Cal. App. 4th 543, 554 (2012) (holding that "[a]n enactment requiring a public entity to conduct an investigation under certain circumstances does not, without more, impose a mandatory duty to take certain specific action."). Plaintiffs argue that the County Social Workers did not review previous referrals, but the language of the statute merely states that the evaluation of risk "includes collateral contracts, a review of previous referrals, and other relevant information" – it does not mandate reviewing referrals. Cal. Welf. & Inst. Code § 16504(a). Accordingly, this section does not establish a mandatory duty.

Plaintiffs next argue that County Defendants had a duty under Section 16501.1 to "utilize the [Child Welfare Services/Case Management System] to access child and family specific information in order to make appropriate and expeditious case decisions," but failed to use that system to "access the prior contacts between the County and the Centeno family." Am. Compl. ¶ 115. This allegation is conclusory, and Plaintiffs fail to point to the particular provision in § 16501.1 that they contend gives rise to the duty. The Court finds this section also does not establish a mandatory duty. The Court thus **GRANTS** the motion to dismiss Count 4 as to the purported breach of mandatory duties under Welfare and Institutions Code §§ 16507.5, 16504, and 16501.1.

Section 328, however, does impose a mandatory duty. That section states that if a social worker "has cause to believe that there was or is within the county [a child suffering abuse], the social worker shall immediately make any investigation the social worker deems necessary . . . ." County Defendants argue that such investigations are discretionary. However, the Code provides that in conducting an investigation, the social worker "shall interview any child four years of age or older who is a subject of an [abuse] investigation . . . ." *Id.* The Ninth Circuit has held that under this code, social workers "have a legal obligation to investigate allegations of child abuse." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019) (citing Cal. Welf. & Inst. Code § 328). This is "explicit and forceful language" necessary to "construe a statute as imposing a

12

mandatory duty." *Cnty. of Los Angeles v. Superior Court*, 107 Cal. App. 5th 160, 182 (2024). Thus, at this stage, Plaintiffs have alleged a mandatory duty to investigate a child abuse allegation under Section 328, and the motion to dismiss Count 4 as to that section is **DENIED**.

### d. California Penal Code

Plaintiffs allege County Defendants breached a mandatory duty set forth in the California Penal Code, which requires that all persons participating in the investigation of suspected child abuse "shall consider the needs of the child victim and do whatever is necessary to prevent psychological harm" to the victim, and that the "intent and purpose of th[e] article is to protect children from abuse and neglect." Cal. Penal Code § 11164. Plaintiffs argue County Social Workers violated Section 11164 because they failed to consider the needs of the child victims and, in some instances, took no action whatsoever to prevent harm. Opp. at 22. However, this section of the Penal Code provides no indication as to how a person investigating abuse should consider the "needs of the child" or what actions they must take. Indeed, an enactment such as Section 11164 does not create a mandatory duty if it "merely recites legislative policies that must be implemented through a public agency's exercise of discretion." *Cnty. of Los Angeles v. Superior Ct.*, 102 Cal. App. 4th 627, 639 (2002). Thus, Section 11164 does not establish a mandatory duty, and the motion to dismiss Count 4 as to the California Penal Code is **GRANTED**.

### 4. Punitive Damages

Finally, County Defendants move to dismiss Plaintiffs' claim for punitive damages. County Mot. at 30. Under 42 U.S.C. § 1983, "punitive damages may be assessed . . . when a defendant's conduct is shown to be motivated by evil motive or intent, or if it involves reckless or callous indifference to the federally protected rights of others." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 916 (9th Cir. 2002). County Defendants are correct that Plaintiffs have not provided factual allegations suggesting Defendant Social Workers acted with an "evil motive." County Mot. at 30. It is a closer call as to whether, viewed as a whole, the amended complaint sufficiently alleges that Defendant Social Workers acted with "reckless or callous indifference" toward the children such that punitive damages could be supported. However, Plaintiffs do not address County Defendants' argument regarding punitive damages and thus concede the point.

*See Namisnak*, 444 F. Supp. at 1146.  Defendants' motion to dismiss Plaintiffs' claim for punitive damages is therefore **GRANTED**.

### B. Lafferty's Motion to Dismiss

Amy Lafferty moves to dismiss the claims brought against her in the amended complaint. Amy Lafferty Motion ("Lafferty Mot.") (ECF 81).  Each claim is addressed below.

#### 1. Section 1983

##### a. Count 1

Plaintiffs' first claim alleges Defendants deprived Plaintiffs of their Fourteenth Amendment rights to be free from harm while involuntarily in government custody and their right to medical care, treatment, and services.  Am. Compl. ¶ 80.  Plaintiffs allege Defendants failed to provide medical, dental, and mental health services, conduct legally required visits, adequately respond to reports of abuse, and ensure adequacy of relative caregiver placements.  Am. Compl. 80.  Lafferty argues Plaintiffs fail to sufficiently plead the claim against her because the operative complaint does not allege Lafferty had any duty or obligation to Plaintiffs encompassing any of those types of services or tasks.  Lafferty Mot. at 11.  However, Plaintiffs allege Lafferty received reports that detailed abusive behavior within the Centeno household, that the Centenos were overwhelmed, that Michelle K., P.K., and Kaya K. were at "high risk" for abuse, that additional children in the household would increase the existing danger, and that Lafferty ignored and failed to follow up on those reports and nonetheless pushed for the Centenos' adoption of additional children.  Am. Compl. ¶¶ 41-43, 45-46.  These constitute more than conclusory allegations of deliberate indifference.  *See Cox*, 913 F.3d at 837.  At this stage, Plaintiffs have sufficiently alleged there was an objectively substantial risk of serious harm, and that a reasonable official would have been compelled to draw that inference.  *See Momox-Caselis*, 987 F.3d at 845.  Lafferty's motion to dismiss Count 1 as to her failure to investigate and respond to reports of abuse is thus **DENIED**.

However, Plaintiffs' first cause of action also alleges County Defendants "interfere[d] with the proper placement of Plaintiffs Michelle K. and P.K. by providing knowingly wrongful and false information to the Court . . . ."  Am. Compl. ¶ 81.  As Michelle K. and P.K. are not parties in

14

1  the instant action, the amended complaint does not state a claim for interference with Plaintiffs
2  P.C. and M.C.'s proper placement. Even if the correct plaintiffs were named, this cause of action
3  would fail to state a claim for interference with proper placement based on judicial deception. "To
4  support a § 1983 claim that a social worker engaged in judicial deception, a plaintiff must show
5  "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the
6  truth, that was (3) material to the judicial decision." *Rieman v. Vazquez*, 96 F.4th 1085, 1093 (9th
7  Cir. 2024) (citing *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 799 (9th Cir. 2024)). Such
8  claims must comply with Federal Rule of Civil Procedure 9(b), which requires that the claim be
9  stated "with particularity," i.e., that a claim allege "the who, what, when, where, and how" of the
10 judicial deception. *See Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021).
11 The allegations in the amended complaint regarding the alleged judicial deception lack the
12 required specificity. The Court therefore **GRANTS** Defendants' motion to dismiss Count 1 as to
13 the interference with proper placement claim with leave to amend.

### b. Count 2

15 Lafferty argues the state-created danger claim in Count 2 fails because Plaintiffs have
16 shown no "affirmative conduct on the part of the state in placing the plaintiff in danger." Lafferty
17 Mot. at 15 (citing *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992)). Plaintiffs argue it is
18 "abundantly clear" that Plaintiffs allege affirmative conduct by Lafferty, Opp. at 6, but the Court
19 cannot discern any such allegations from the Amended Complaint. Plaintiffs' allegations that
20 Lafferty provided courts with false information or withheld information from courts fall short of
21 the specificity required. Thus, Lafferty's motion to dismiss Count 2 is **GRANTED**. Because
22 Plaintiffs may be able to allege affirmative conduct by Lafferty necessary to state a claim, the
23 Court cannot determine that amendment of these claims would be futile and therefore grants leave
24 to amend.

### 2. Section 1985

26 Lafferty also moves to dismiss the Section 1985 claims in Counts 1 and 2 on the basis that
27 Plaintiffs fail to allege any facts showing conspiracy. Lafferty Mot. at 13-14. "To state a cause of
28 action under § 1985, a complaint must allege (1) a conspiracy, (2) to deprive any person or a class

of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971)). "A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). To satisfy the first element, "the parties to have conspired must have reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful arrangement." *Gilbrook v. City of Westminister*, 177 F.3d 839, 856 (9th Cir. 1999). In the Ninth Circuit, a claim under Section 1985 must plead specific facts supporting the allegation that defendants conspired together. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

Here, Plaintiffs allege, for example, that Defendants "acted, knew and/or agreed, and/or thereby conspired together . . . to deprive and continue to deprive Plaintiffs of their constitutional rights . . . ." Am. Compl. ¶ 82. Viewing the allegations in the FAC in the light most favorable to Plaintiffs, the Court finds it "contains legal conclusions but no specification of any facts to support the claim of conspiracy," *Karim-Panahi*, 839 F.2d at 626, and therefore **GRANTS** Defendants' motion to dismiss the Section 1985 claims against Lafferty.[3] Because Plaintiffs may be able to allege additional facts sufficient to state a claim against Lafferty for judicial deception and conspiracy, dismissal is with leave to amend.

## II. CONCLUSION

In sum, each motion is **GRANTED IN PART AND DENIED IN PART**.

Specifically, as to the County Defendants' motion, the motion to dismiss Counts 1 and 2 is **DENIED** as to the County Social Workers and **GRANTED** as to Sonoma County. The Court **DENIES** the motion to dismiss Count 3 as to the third and fifth policies and **GRANTS** the motion to dismiss Count 3 as to the first, second, and fourth policies with leave to amend. The motion to

---

[3] Though the Court need not look beyond the first element to determine dismissal of the Section 1985 claims is proper, it notes that the amended complaint is devoid of allegations that Lafferty was motivated by the necessary discriminatory animus. *See Griffin*, 403 U.S. at 102-03.

16

dismiss Count 4 is **DENIED** as to the Adoption Program Regulations, Child Welfare Services Regulation § 31-125, Welfare and Institutions Code § 328, and **GRANTED** as to Child Welfare Services Regulation § 31-405.22, Welfare and Institutions Code §§ 16507.5, 16504, and 16501.1, Cal. Penal Code § 11164 without leave to amend.  The motions to dismiss Counts 1 and 2 as to Sonoma County and Plaintiffs' request for punitive damages are **GRANTED** without leave to amend.

As to Lafferty's motion, the motion to dismiss the Section 1983 claim in Count 1 is **DENIED** as to the failure to investigate and respond to reports of abuse and **GRANTED** as to the interference with proper placement.  Lafferty's motion to dismiss the Section 1983 claim in Count 2 is **DENIED IN PART AND GRANTED IN PART** with leave to amend, and her motion to dismiss the Section 1985 claims in Counts 1 and 2 is **GRANTED** with leave to amend.

Any amended complaint is due by **July 9, 2025**.  Leave to amend is granted solely to cure the defects identified in this Order.  No parties or claims may be added without leave of Court or stipulation of Defendants.  Plaintiffs are cautioned that failure to remedy the defects identified in this Order will very likely result in dismissal of the claims without leave to amend.  Moreover, the parties are cautioned that relitigating matters already resolved by the Court, unless explicitly allowed by the Federal Rules or leave of court, will result in sanctions.

If Plaintiffs elect not to file an amended complaint, they shall file a notice of intent to stand on their amended complaint no later than **July 9, 2025**.

**IT IS SO ORDERED.**

Dated: June 16, 2025

_____
**A**RACELI **M**ARTÍNEZ-**O**LGUÍN
**United States District Judge**